# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1132

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Michal Jankowski, | * | |
| | * | |
| Appellant. | * | |

_____

No. 99-1352

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Sylwia Jankowski, | * |
| | * |
| Appellant. | * |

_____

Submitted: September 14, 1999

Filed: October 12, 1999

_____

Before BOWMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOWMAN, Circuit Judge.

The defendants in this consolidated appeal, siblings Sylwia and Michal Jankowski, were convicted of one count each of stealing federally insured deposits for their roles in an armored car robbery. See 18 U.S.C. § 2113(b) (1994 & Supp. III 1997). Sylwia argues that the District Court erred in allowing the Government to introduce evidence that the defendants spoke in Polish and in failing to apply the minor-participant reduction to her sentence calculation. Michal argues that the court erred in rejecting his duress defense and in applying a sentencing enhancement for abuse of a position of trust. In addition, both defendants argue that the court erred in applying a sentencing enhancement for theft from the person of another. We affirm both convictions but reverse and remand for resentencing on the enhancements for abuse of a position of trust and theft from the person of another.

I.

The armored car robbery was an inside job, and Michal Jankowski, a messenger for Security Armored Car, was the insider. On March 2, 1998, Michal was teamed with driver Ronald Felty. At their first stop, a McDonald's in St. Louis County, Missouri, Michal opened the back of the truck and allowed accomplice Troy Bell to take four bags containing over $185,000. While Bell ran with the money to a getaway car driven by accomplice Andre Worthy, Michal acted as if he had just been the victim of a robbery. During the theft, the inculpable Felty remained in the driver's seat, which was separated from the back of the truck by a bulkhead with a plexiglass window.

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

As it turned out, Felty was innocently present for a robbery coordinated not by three, but four people. Michal's sister Sylwia, who was living with Bell at the time, helped present the robbery plan to Bell and acted as an intermediary between Bell and Michal. Sylwia's role in the robbery was described in detail by Bell at trial. Testifying for the Government, Bell indicated that Sylwia first mentioned the idea of a robbery to him and that she and Michal later presented it in detail. Bell also testified that he heard Sylwia talking on the phone with Michal in Polish and that she then relayed information regarding a possible location for the robbery. Finally, Bell testified that Sylwia provided a gym bag for the money and that she relayed information to Bell on the day of the robbery, saying, "It's time."

With Bell testifying at trial, Michal did not deny his involvement in the robbery. Instead, he attempted to maintain a duress defense. Michal testified that Bell took him to a nightclub and showed him a gun, saying he wanted information (presumably about the armored car route) or Sylwia "would be taken care of." Tr. at 2-283. Michal explained that he was scared to talk to the police because of his family's experience in Poland. After the Government's objection to the reference of national origin, Michal made an offer of proof. Michal's father was beaten and spent five years in jail for participating in the Solidarity movement in Poland. Further, Michal believed that the police would not believe him because he had learned, while studying criminal justice at a community college, that the justice system in the United States does not always work. The District Court rejected Michal's offer of a duress defense because the threat was not imminent and Michal had a reasonable opportunity to go to the police. The court prohibited further mention of Poland and instructed the jury to disregard the evidence of Bell's threats.

The jury convicted Michal and Sylwia of one count each of stealing federally insured deposits. At sentencing, the District Court calculated an offense level of seventeen for Sylwia and twenty-three for Michal. Neither defendant had any criminal history. Accordingly, the court sentenced Sylwia and Michal to twenty-six and fifty-

seven months' imprisonment respectively, each sentence being within the guidelines range for their enhanced offense levels.

## II.

Sylwia first argues that the District Court erred in allowing Bell to testify that she spoke in Polish on the telephone. Sylwia argues that the admission of this evidence allowed her national origin (Polish) to be used in determining guilt and that such a use is contrary to our decision in United States v. Vue, 13 F.3d 1206 (8th Cir. 1994). We review the District Court's decision to admit this evidence for abuse of discretion. See United States v. Martin, 180 F.3d 965, 966 (8th Cir. 1999).

Vue stands for the proposition that "the admission of testimony tying the ethnic descent of a defendant to the ethnic characteristics of drug dealers in a specific geographic area or a specific type of drug trade is improper." Vue, 13 F.3d at 1213 (reviewing such evidence under Rules 401, 402, and 403 of Federal Rules of Evidence). In the opium smuggling trial of two brothers of Hmong ethnic descent, the Vue trial court admitted extensive testimony concerning the connection between Hmong individuals and opium smuggling. Among other things, the witness estimated that ninety-five percent of opium smuggling cases in the Twin Cities area were "Hmong related." Id. at 1212. This Court found that, in allowing the introduction of this type of evidence, the trial court committed reversible error. See id. at 1213; accord United States v. Rodriguez Cortes, 949 F.2d 532, 540-42 (1st Cir. 1991) (evidence of Colombian nationality used to show criminal association with another Colombian); United States v. Doe, 903 F.2d 16, 21-23 (D.C. Cir. 1990) (evidence that Jamaicans were taking over drug trade).

We find no such error in this case. First, the evidence was relevant to show that Sylwia relayed information about the robbery from Michal to Bell. In addition, the jury reasonably could have inferred that Sylwia spoke in Polish so that she would not likely

-4-

be understood if overheard by a third party. See Fed. R. Evid. 401, 402. Second, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403. Unlike Vue, Rodriguez Cortes, and Doe, the disputed evidence here was not linked with any argument or evidence that Sylwia was more likely to have committed the crime because of her national origin. See United States v. James, 30 F.3d 84, 85 (8th Cir. 1994) (per curiam) (distinguishing Vue because references to nationality at trial did not imply "a connection between Jamaican citizenship and the likelihood of involvement in the drug trade").

## III.

Sylwia next argues that the District Court clearly erred in refusing to apply a two-level "minor participant" reduction to her sentencing calculation. Section 3B1.2(b) of the United States Sentencing Guidelines provides: "If the defendant was a minor participant in any criminal activity, decrease by 2 levels." U.S. Sentencing Guidelines Manual § 3B1.2(b) (1998). The commentary defines a minor participant as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." Id. § 3B1.2 commentary (n.3).

Whether a person is a minor participant is a factual determination that we review for clear error. See United States v. Wells, 127 F.3d 739, 750 (8th Cir. 1997). The District Court rejected the minor-participant reduction because Sylwia helped recruit Bell and because she fully understood the nature and extent of the planned robbery. We do not find that the District Court clearly erred in making this finding. Accord United States v. Welch, 97 F.3d 142, 152 (6th Cir. 1996) (affirming rejection of minor-participant reduction for defendant who, among other things, recruited others to traffic drugs), cert. denied, 519 U.S. 1134 (1997); United States v. Sanchez, 908 F.2d 1443, 1449 (9th Cir. 1990) (same). Accordingly, this argument affords Sylwia no basis for a reduction of her sentence.

IV.

Michal first argues that the District Court erred in refusing to allow him to present evidence in support of a duress defense. The District Court based its refusal on Michal's inability to make out a prima facie case of duress. Whether there is sufficient evidence to submit an affirmative defense to a jury is a question of law and thus is subject to de novo review.[2] See United States v. Scout, 112 F.3d 955, 960 (8th Cir. 1997).

This Court has recognized duress as a viable defense to a charge under 18 U.S.C. § 2113. See United States v. Simpson, 979 F.2d 1282, 1287-88 (8th Cir. 1992), cert. denied, 507 U.S. 943 (1993); accord United States v. Mitchell, 725 F.2d 832, 833-35 (2d Cir. 1983). To establish the defense of duress, Michal must show that:

> 1) he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; 2) that he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to commit a criminal act; 3) that he had no reasonable, legal alternative to violating the law; and 4) that a direct causal relationship may be reasonably anticipated between the commission of the criminal act and the avoidance of the threatened harm.

United States v. Lomax, 87 F.3d 959, 961 (8th Cir. 1996).

---

[2] Michal cites United States v. Blankenship, 67 F.3d 673 (8th Cir. 1995), for the proposition (unhelpful to him) that the exclusion of evidence offered to support a duress defense is reviewed for clear error. This Court in Blankenship only noted that the defendant argued that the trial court committed clear error by excluding evidence of his justification defense. See id. at 677. In both this case and Blankenship, the trial court concluded that the facts offered were insufficient to establish the justification defense of duress. Such a conclusion is a legal determination, subject to de novo review.

We agree with the District Court's determination that, based on Michal's offer of proof, no reasonable jury could have found that Michal lacked a reasonable, legal alternative to violating the law. Michal could have gone to the police or to his supervisor at Security Armored Car in order to avoid the robbery and prevent harm from coming to his sister. Michal's only evidence of having no reasonable, legal alternative was that he had a subjective belief, based upon his father's experiences in Poland and Michal's criminal justice class in a community college, that going to the police would be futile. This subjective belief is insufficient as a matter of law to meet the objective standard that there must be no reasonable, legal alternative to violating the law.[3]

V.

Michal next argues that the District Court erred in imposing a two-level enhancement to his base offense level for "abuse of a position of trust" under section 3B1.3 of the guidelines. We review the District Court's application of the abuse-of-

---

[3] Michal cites United States v. Contento-Pachon, 723 F.2d 691 (9th Cir. 1984), in support of his claim of duress. In Contento-Pachon, the defendant claimed that he did not go to the police in Bogota, Colombia because he feared that they were corrupt. The Ninth Circuit found this allegation sufficient: "The trier of fact should decide whether one in Contento-Pachon's position might believe that some of the Bogota police were paid informants for drug traffickers and that reporting the matter to the police did not represent a reasonable opportunity of escape." Id. at 694. Even were we obligated to follow the Ninth Circuit's decision in Contento-Pachon, which we are not, we would find Michal's case distinguishable. Given the well-documented circumstances in Bogota, Colombia, one might reasonably believe that going to the Bogota police in Contento-Pachon's situation would be futile. An objective standard governs, and Michal could not have reasonably believed that exposing Bell's plans and threats to the police in St. Louis would be futile.

trust enhancement for clear error.[4]  See United States v. Wadena, 152 F.3d 831, 856 (8th Cir. 1998), cert. denied, 119 S. Ct. 1355 (1999).

Section 3B1.3 of the guidelines states, in relevant part, "If the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels."  U.S. Sentencing Guidelines Manual § 3B1.3 (1998).  There is no question here that Michal abused his position as messenger of Security Armored Car in a manner that significantly facilitated the robbery.  The only question is whether Michal's position as a messenger for an armored car company constitutes a "position of public or private trust" within the meaning of the guidelines.

In 1993, the Sentencing Commission amended the commentary to section 3B1.3 in order to clarify the meaning of "public or private trust."[5]  U.S. Sentencing Guidelines

---

[4] While two cases in this Circuit state that the "application of § 3B1.3 is a factual finding, reviewed for clear error," Wadena, 152 F.3d at 856; accord United States v. Johns, 15 F.3d 740, 744 (8th Cir. 1994), these cases both turned on the wholly factual determination of whether the abuse "significantly facilitated" the offense.  Since the commentary to section 3B1.3 was amended in 1993 to include a thorough legal definition of "position of public or private trust," see infra, the determination of whether the defendant occupied a position of trust has become more akin to a mixed question of law and fact for which findings of fact are subject to clear-error review while the legal application of the guidelines to those facts is subject to de novo review.  Cf. United States v. Dorsey, 27 F.3d 285, 288 (7th Cir. 1994) ("The interpretation of the term 'position of trust' is a legal question that we review de novo."), cert. denied, 513 U.S. 1133 (1995).  Under either standard of review, our ultimate conclusion that the District Court erred in enhancing Michal's sentence for abuse of trust remains the same.

[5] Prior to 1993, the federal courts applied the abuse-of-trust enhancement inconsistently.  The United States Sentencing Commission amended the commentary to "reformulate[] the definition of an abuse of position of trust to better distinguish cases warranting this enhancement."  U.S. Sentencing Guidelines Manual Appendix C amend. 492 (1997).  Consequently, much of the pre-1993 caselaw on section 3B1.3 is

-8-

Manual Appendix C amend. 492 (1997).  The commentary now reads:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature.  For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult).  This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination.  This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

> Notwithstanding the preceding paragraph, because of the special nature of the United States mail an adjustment for an abuse of a position of trust will apply to any employee of the U.S. Postal Service who engages in the theft or destruction of undelivered United States mail.

U.S. Sentencing Guidelines Manual § 3B1.3 commentary (n.1) (1998).

The District Court found that Michal's position as a messenger for Security Armored Car was "more like that of a postal employee, who is trusted with the delivery of mail than it is that of a bank teller who only handles a small amount of cash."  Tr. of Michal's Sent. at 23.  We find this application of section 3B1.3 to be clearly erroneous.

---

not particularly helpful to us. See, e.g., United States v. Parker, 903 F.2d 91, 104 (2d Cir. 1990) (affirming abuse-of-trust enhancement for security guard involved in armored car robbery).

Under the commentary, the enhancement for postal employees is an exception to the general definition as stated in the first paragraph of note 1. In our view, the enhancement for postal employees was not meant to carve out a general exception for all those who abuse positions that involve tasks similar to the delivery of mail. Instead, the language "[n]otwithstanding the preceding paragraph, because of the special nature of the United States mail" makes it clear that the exception is limited and meant only to protect the delivery of the mail.

Having determined that the postal employee exception does not make the enhancement proper as to Michal, we turn to the question of whether Michal qualifies for the enhancement under the general definition of "position of public or private trust" set out in the first paragraph of note 1. We conclude that Michal's position as a messenger for Security Armored Car does not qualify as a position of trust within the meaning of section 3B1.3. Michal's position as messenger is not characterized by professional or managerial discretion. As a messenger, Michal's job was to deliver and pick up money at various businesses. We find it difficult to believe that, as essentially a courier, Michal was afforded "substantial discretionary judgment that is ordinarily given considerable deference." U.S. Sentencing Guidelines Manual § 3B1.3 commentary (n.1) (1998); cf. United States v. West, 56 F.3d 216, 220 (D.C. Cir. 1995) (finding that courier did not occupy position of trust within meaning of section 3B1.3). In fact, Michal's position falls far short of requiring the sort of judgment exercised in the types of positions that this Circuit has found to qualify as "positions of public or private trust" since the 1993 amendment took effect. See United States v. O'Hagan, 139 F.3d 641, 656 (8th Cir. 1998) (senior partner at law firm engaged in securities fraud); United States v. Noske, 117 F.3d 1053, 1060 (8th Cir. 1997) (financial planning adviser and tax preparer engaged in tax fraud), cert. denied, 118 S. Ct. 315, 389, 1060 (1998); United States v. Gjerde, 110 F.3d 595, 605 (8th Cir.) (bank president engaged in conspiracy to defraud Department of Housing and Urban Development), cert. denied, 118 S. Ct. 367 (1997); United States v. Elliott, 89 F.3d 1360, 1370 (8th Cir. 1996) (attorney engaged in billing fraud), cert. denied, 519 U.S. 1118 (1997); United States

v. Baker, 82 F.3d 273, 277 (8th Cir.) (police officer engaged in extortion of criminal suspect), cert. denied, 519 U.S. 1020 (1996); United States v. Fitzhugh, 78 F.3d 1326, 1331-32 (8th Cir.) (attorney engaged in conspiracy to defraud Small Business Administration), cert. denied, 519 U.S. 902 (1996).

Because the District Court's application of the abuse-of-trust enhancement was clear error, Michal must be resentenced.

VI.

Finally, both Michal and Sylwia argue that the District Court erred at sentencing in applying an enhancement for "theft from the person of another" to their offense levels under section 2B1.1(b)(2) of the guidelines. Whether the theft was from the person of another is a factual determination. As such, we review the District Court's determination for clear error. See United States v. Lamere, 980 F.2d 506, 510 (8th Cir. 1992).

Section 2B1.1(b)(2) provides a two-level increase to the sentencing calculation "[i]f the theft was from the person of another." U.S. Sentencing Guidelines Manual § 2B1.1(b)(2) (1998). The commentary explains: "'From the person of another' refers to property, taken without the use of force, that was being held by another person or was within arms' reach. Examples include pick-pocketing or non-forcible purse-snatching, such as the theft of a purse from a shopping cart." Id. § 2B1.1 commentary (n.7).

The District Court found the enhancement applicable because "the person [Felty] was present, [and the money] was taken from them in their presence."[6] Tr. of Sylwia's

_____

[6] While the District Court did not explicitly refer to driver Felty, the argument at Sylwia's sentencing focused only on Felty as the "person" from whom the money was taken. At Michal's sentencing, the District Court also referred to Michal as being

Sent. at 15. We find this determination to be clearly erroneous. While Felty was present at the scene of the robbery, he was not holding the money nor was he within arm's reach of the money. From the driver's seat, Felty simply could not have reached the money, which was in the back of the truck and was separated from Felty by a bulkhead with a plexiglass window. This sentencing error requires resentencing of both Michal and Sylwia.

## VII.

We reverse the District Court's decision to apply to Michal a sentencing enhancement for abuse of a position of trust. We also reverse the District Court's decision to apply to both Michal and Sylwia a sentencing enhancement for theft from the person of another. Accordingly, we vacate both Michal's and Sylwia's sentences and remand their cases to the District Court for resentencing, the new sentences to be calculated without applying these enhancements. The denial of a minor-participant sentencing reduction to Sylwia is affirmed. Michal's and Sylwia's convictions are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

within arm's reach of the money. On appeal, the Government argues, in the alternative, that the money was taken from the "person" of Michal. The Government relies on Michal's claim of duress to support this difficult argument. We first note that this reasoning fails to support the application of the enhancement to Michal. Secondly, we note that the Government argued, and the District Court determined (a determination that we have upheld earlier in this opinion, see part IV, supra), that the evidence of duress was insufficient as a matter of law.