**UNITED STATES of America,**
**Plaintiff,**

v.

**Daniel CARD and William**
**Leon, Defendants.**

**No. 99–CR–674 B.**

United States District Court,
D. Utah,
Central Division.

Feb. 10, 2000.

Barbara Bearnson, Asst. United States Attorney, Salt Lake City, UT, for Plaintiff United States of America.

Mary C. Corporon, Salt Lake City, UT, for Defendant Daniel Card.

W. Andrew McCullough, Orem, UT, for Defendant William Leon.

## MEMORANDUM AND ORDER

BOYCE, United States Magistrate Judge.

Defendant, Daniel Card and William Leon, are jointly charged in a six count indictment arising out of two armed robberies of federally insured credit unions. Counts I and III charge the armed robbery of two credit unions, one on October 18, 1996 and one on December 13, 1996 (18 U.S.C. § 2113(a) & (d)). During the robberies defendants are alleged to have carried a 12 gauge sawed off shotgun in relation to the violent crime of the robberies (Counts II, IV) (18 U.S.C. § 924(c)(1)). Counts V and VI charge defendants, in association with each robbery, with having previously been convicted of a crime punishable by imprisonment for more than a year and being in possession of the sawed off shotgun in violation of 18 U.S.C. § 922(g)(1).

The perpetrators of each of the robberies wore masks or disguises during the robberies. Defendant William Leon is white, defendant Daniel Card is an African-American. Card has made a motion to prohibit Government witnesses from testifying that a perpetrator of the robberies "talked like" or "acted like" an African-American or had mannerisms like an African-American.

Card states that the witnesses were unable to see the skin or hair of the perpetrators because of the disguises they wore. Defendant Card contends factors other than visual observation as to race are not credible and that because defendant Card is African-American the evidence would be prejudicial.

### *Voice Identification Opinion On Ethnic Derivation*

Under Rule 701, F.R.E. a lay witness may give an opinion on a matter "helpful" ... to "the determination of a fact in issue." The opinion must be rationally based on the perception of the witness. *Id.*; *Weese v. Schukman*, 98 F.3d 542, 550 (10th Cir.1996); *United States v. Dicker*, 853 F.2d 1103 (3rd Cir.1988). Therefore, there is no *per se* preclusion with regard to a lay witness's opinion as to whether a person's voice has characteristics of a particular nature. The facts may be those perceived from observation by the witnesses or "perceived from their own senses." *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 847–48 (10th Cir.1979); *United States v. Brown*, 540 F.2d 1048, 1053 (10th Cir.1976). The matter is one within the discretion of the court as to whether the evidence would be helpful to the trier of fact. Professor Michael H. Graham, *Handbook of Federal Evidence*, 4th Ed. Vol. 2, § 701.1 p.13 (1996) observes as to the lay opinion:

> The topics upon which lay witnesses have been permitted to express an opinion are extremely varied. They include "[t]he appearance of persons or things, identity, the manner of conduct, competency of a person, feeling, degrees of light or darkness, sound, size, weight, distance and an endless number of things that cannot be described factually in words apart from inferences".[1]

Opinion on identification by visualization is proper, including in some instances conclusions drawn from photographs. *United States v. Ingram*, 600 F.2d 260, 261–62 (10th Cir.1979); *United States v. Borrelli*, 621 F.2d 1092, 1095 (10th Cir.1980). Therefore, evidence that would be helpful to the jury in determining the possible identity of the credit union robbers may, on proper foundation, be admitted. Opinion on stylistic similarities in handwriting to identify the source of correspondence has been held proper. *United States v. Clifford*, 704 F.2d 86 (3rd Cir.1983). Voice identification as to a particular person has been held to be proper. *United States v. Young Buffalo*, 591 F.2d 506 (9th Cir. 1979); *United States v. Vega*, 860 F.2d 779 (7th Cir.1988).

With specific reference to making ethnic identity by a witness having heard a per-

---

1. Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 417 (1952).

son's speech, in *United States v. Bostic*, 713 F.2d 401 (8th Cir.1983), the court in a bank robbery prosecution, found no error by the district court in letting witnesses who were present at the robbery testify, that on the basis of the manner and content of the robber's speech, that the witnesses believed the robbers were black.

In *United States v. Henry*, 151 F.3d 1031, 1998 WL 386113, *4 (4th Cir.1998) the court held a lay witness could give an opinion that a person spoke with a Jamaican accent. The court found no abuse of discretion and that under the terms of Rule 701, F.R.E. the evidence was rationally related to perception and was helpful.

State courts have passed on this issue more frequently than federal courts. Most recently, in *Clifford v. Commonwealth*, 7 S.W.3d 371,1999 WL 1044493 (Ky., 1999) the Kentucky Supreme Court allowed an undercover police officer, who monitored a conversation between a suspected defendant and another police officer, to testify that one suspect's voice sounded like that of a black male. The court relied on other state cases for its conclusion. It noted an officer could testify that a voice sounded like that of a man or women and the standard under Rule 701, K.R.E. would allow the opinion on ethnicity as one rationally based on the officer's perception and helpful to a determination of a fact in issue.

In *People v. Sanchez*, 129 Misc.2d 91, 492 N.Y.S.2d 683, 684 (N.Y.Sup.1985) the court approved lay opinion evidence as to whether a voice expression or accent was Puerto Rican or Dominican. The court said:

> Accent is a branch of phonetics, which in turn, is a division of linguistics. While some writers use accent and dialect interchangeably, accent relates to how words are pronounced whereas dialect involves not only accent but particular speech patterns of a group or region. It is clear that lay witnesses can often detect the distinctive accent related to particular ethnic or geographic groups. Thus, a lay witness depending upon his

experience, could distinguish between a Yiddish accent and an Italian accent, or between a Russian and an English accent, or between a Spanish and French accent. In addition, within broad categories, certain more specific accents, characteristic of a particular region, may be ascertained. For example, the lay witness may be able to reliably identify the "Brooklyn" accent, as distinguished from the "Boston" accent, or the "Southern" accent from the "Cockney" accent. Human experience has taught us to discern the variations in the mode of speech of different individuals. "Individual speech patterns

. . . . . . . . . . . are influenced by

. . . . . . . . . . major forces

. . . . . . . . . . The first and most notable influence on speech behavior is the region and locale in which the individual grows up

. . . . . . . . . . they

. . . . . . . . . . clearly reveal an individual's geographic origin.

Regional speech differences

. . . . . . . . . . are primarily matters of pronunciation." (Quoting reference).

In *Rhea v. State*, 104 Ark. 162, 147 S.W. 463 (Ark., 1912) the court held a lay witness should be allowed to testify as to the distinction between voices of persons of different nationalities and races. In *State v. Kinard*, 39 Wash.App. 871, 696 P.2d 603, 605 (1985) the court held that an opinion that a burglar sounded black was admissible. In *State v. McDaniel*, 392 S.W.2d 310 (Mo., 1965) the court held an opinion as to an African–American accent was admissible.

In a somewhat different, but analytically analogous case, *United States v. Jankowski*, 194 F.3d 878 (8th Cir.1999), a defendant contended the trial court erred in allowing a witness to testify that the defendant spoke in Polish on the telephone. The court found no error. The court found the opinion to be logically probative

of the issues in the case. It also rejected a claim of prejudice under Rule 403.

Sometimes persons of various ethnic, racial and geographic areas have accents and mannerisms of expression that are unique or particular and identify the speaker as one of a certain group. This, of course, is not always the case, but may be. The opinion is, therefore, a matter that is relevant for the jury as to what weight the opinion should be given. Such evidence, as in this case, could be logically probative on the issue of the identity of Daniel Card as a participant in the robberies.

### "Acted Like" or "Mannerisms Like" An African–American

The defendant Card challenges the potential opinion of witnesses that one of the robbers "acted like" or had "mannerisms like" an African–American. Just what is involved in the factual content of this issue is not specified. A speech mannerism would be proper as noted before. No affidavit has been submitted to provide any factual information about the issue. The court has serious doubts about such evidence in the abstract, to the extent it is unrelated to speech. Accent and speech mannerisms are more particular and accepted. Actions and mannerisms otherwise are vague and possibly more individual in nature. There could be certain behavior and conduct that is related to one's culture or group that might be specific to identity. However, adequate foundation would have to be established as to the helpfulness of such evidence in order to meet the requirements of Rule 701, F.R.E. It would have to be particular to the relevant classification of the person involved. The court cannot, at this time, determine the helpfulness of such evidence, Rule 701 F.R.E. It is not before the court.

In the context of this motion, the court cannot properly rule on the matter because the issue is couched in such vague terms and is without a specific content for factual consideration. Any ruling would be speculative. Therefore, this matter must be deferred until trial, to determine whether the government will offer such evidence and to consider the particular factual context of any such proffer.

### Prejudice—Rule 403, F.R.E.

Rule 403, F.R.E. allows a court, in its discretion, to exclude logically probative and relevant evidence if it is "substantially" outweighed by the danger of "unfair prejudice." *United States v. Madrid*, 673 F.2d 1114 (10th Cir.1982) (evidence of other crimes in a robbery prosecution held sufficiently relevant that trial court did not err in refusing to exclude it) *United States v. Porter*, 881 F.2d 878 (10th Cir.1989) (other crimes evidence admissible on robber's identification).

Exclusion of relevant evidence pursuant to Rule 403, F.R.E. especially at the pretrial stage, is an "extreme measure". *Weir v. Federal Insurance Co.*, 811 F.2d 1387 (10th Cir.1987) (extraordinary measure); *United States v. Meester*, 762 F.2d 867, 875, (11th Cir.1985); *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 859 (3rd Cir.1990); *Graham*, supra, Vol. 1 p. 248. The burden is on the defendant Card in this case to establish any prejudice from the use of voice evidence identifying one of the robbers as being, or believed to be, African–American. The evidence is logically probative of defendant Card's involvement in the robbery when considered with the evidence in the case.

In *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) the court said:

> The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. See generally 1 J. Weinstein, M. Berger, & J. McLaughlin, Weinstein's Evidence, ¶ 403[03] (1996) (discussing the meaning of "unfair prejudice" under Rule 403). So, the Committee Notes to Rule 403 explain, " 'Unfair prejudice' within its context means an undue tendency to suggest

decision on an improper basis, commonly, though not necessarily, an emotional one."

In this case, the evidence is not being used to suggest that because of defendant Card's ethnic status, he was more likely to commit the offense or was more likely to be an armed robber. See *United States v. Vue*, 13 F.3d 1206 (8th Cir.1994); *Jankowski*, supra. Rather, the evidence is directly related to the legitimate factor of identification in the case. Defendant Card has failed to show how the evidence would otherwise be prejudicial. The mere fact that Card is African–American, does not make the evidence prejudicial. *Clifford v. Commonwealth*, supra; *Jankowski*, supra.

Therefore, the evidence that one of the robbers may have "sounded like", "talked like", or spoke with mannerisms of an African–American, will not be excluded under Rule 403, F.R.E. assuming a proper foundation. As to possible evidence of mannerisms or actions of a robber as being African–American, that issue must be resolved at trial with a better showing of a factual relationship and proper foundation.

**IT IS SO ORDERED.**